Chief Judge Desmond
(dissenting). The quéstion on this appeal is as to the validity of an amendment to section 22 of the New York City Charter which amendment provides for ten additional members of the City Council, two to be elected at large from each of the five boroughs of the city. The nominating and voting formula found in the new enactment is most unusual in that, although there are two councilmen to be elected at large from each borough, no citizen may vote for more than one candidate and no political party may nominate more than one candidate. The necessary and intended result is that in each borough one of the newly created councilmanic offices is to be filled by a candidate who has gotten a majority vote but the other new councilman in the same borough will gain office by a minority vote only.
Section 1 of article II of the New York Constitution as it is now and has been since 1826 states the flat proposition that every citizen with the specified age and residence qualifications “ shall be entitled to vote * * * in the election district of which he or she shall at the time be a resident * * * for all officers that now are or hereafter may be elective by the people ”. The guarantee of the right to vote for “ all officers * * * elective by the people ” is so plainly and positively articulated (whatever its original purpose, see Johnson v. City of New York, 274 N. Y. 411, 432) as not to need or allow construction or interpretation (Settle v. Van Evrea, 49 N. Y. 280). No refined reasoning can make it mean the opposite of what it says.
The Charter amendment we are examining was adopted in 1961 by referendum vote so as to add ten more (two from each borough) to the existing number of members of the City Council. A voter is, however, not to be permitted to cast his vote for the two candidates he prefers for the two newly added *146 offices in Ms borough. The new Charter provision allows him to vote for one only of the candidates, although there are two such new offices in each borough. A further provision of the Charter amendment directs that of the candidates nominated by any one political party (or independent body) for these new borough-wide councilmanic offices, no more than one shall be elected. In other words: no voter can vote for more than oné and no political group can elect more than one. Result: of the ten new councilmen no more than five can be the nominees of any one party. Another result would be that of several minority parties represented on the ballots in a borough, one only such minority group could elect a councilman and other minorities, although producing nearly as many votes, could have none.
Appropriate legislative representation for minorities is a desirable objective but in a government of laws a worthy end cannot validate unconstitutional means or change the Constitution’s meaning “because the enlarged construction would be desirable or convenient” (People ex rel. Williams v. Dayton, 55 N. Y. 367, 379). Since the Charter amendment prevents a citizen from voting for all the offices being contested for in his voting district, it violates section 1 of article II of the State Constitution and is a complete nullity, totally unenforcible.
We find no decision which would be a precedent for so construing the Constitution as to validate this statutory amendment. The closest case is, of course, Johnson v. City of New York (274 N. Y. 411, supra), holding valid the proportional representation system of choosing city legislators. It was found possible to hold the plan not to be violative of the constitutional mandate that every citizen must be allowed to vote for every elective officer. In a sense, under proportional representation the voter did or could express a choice for all the council memberships to be filled since he could state on his ballot his first, second, third choice, etc. Anyhow, the proportional representation system is entirely different from the one proposed here and the Johnson case cannot be read as setting up some new broad nonequality principle in opposition to the Constitution itself.
The Appellate Division, in holding the amendment to be valid under the State Constitution, did not deal directly with section 1 of article II (supra), apparently being of the opinion *147 that this section has no impact on “ limited voting ” in local elections. The Appellate Division took the position (seemingly rejected in Johnson at page 431 of 274 M. Y.) that under section 12 of article IX of the Constitution (home rule) the city, being expressly given power to enact local laws in respect to the ‘ ‘ mode of selection ’J of its officers, can ignore the guarantee of section 1 of article II that each voter must be allowed to vote for all elective officers. In this connection the court cited Bareham v. City of Rochester (246 N. Y. 140, 146) and Spitzer v. Village of Fulton (172 N. Y. 285, 289) but we find nothing in those decisions authorizing a system of local elections in direct opposition to the fundamental command (see Matter of Hopper v. Britt, 203 N. Y. 144, 151) of section 1 of article II. 11 Mode of selection ’ ’ cannot be stretched so far.
The Appellate Division did add a statement that the Johnson ‘‘ proportional representation” case (274 N. Y. 411, supra) justified the amendment we are considering. As explained above, we do not agree.
Beyond all this there is a real question as to whether this Charter amendment conflicts with the Fourteenth Amendment to the United States Constitution and the concept of political equality of voters so strongly asserted in Gray v. Sanders (372 U. S. 368, 380, 381, 382) with its insistence on ‘ ‘ one voter, one vote ’ ’.
We agree with Special Term. The order of the Appellate Division should be reversed and the Special Term order reinstated, without costs.
Judges Yak Voorhis, Scileppi and Gibson * concur with Judge Field; Judge Burke concurs in a separate memorandum; Chief Judge Desmond dissents and votes to reverse and to reinstate the order of Special Term in an opinion in which Judge Dye concurs.
Order affirmed.

 Designated pursuant to section 2 of article VI of the State Constitution in the temporary absence of Judge Foster,