## SAILORS ET AL. *v.* BOARD OF EDUCATION OF THE COUNTY OF KENT ET AL.

No. 430.   Argued April 17–18, 1967.—Decided May 22, 1967.

*Wendell A. Miles* argued the cause for appellants. With him on the brief was *Roger D. Anderson.*

*Paul O. Strawhecker* argued the cause for appellees and filed a brief for Kentwood Public Schools.   With him on the brief for the Board of Education of the County of Kent was *George R. Cook.*   On the brief for appellee the Attorney General of Michigan, were *Robert A. Derengoski,* Solicitor General, and *Eugene Krasicky,* Assistant Attorney General.

*Francis X. Beytagh, Jr.,* argued the cause *pro hac vice* for the United States, as *amicus curiae,* urging reversal.

With him on the brief were *Solicitor General Marshall, Assistant Attorney General Doar* and *Bruce J. Terris.*

Briefs of *amici curiae* were filed by *Louis J. Lefkowitz,* Attorney General, *pro se,* and *Daniel M. Cohen, Robert W. Imrie* and *George D. Zuckerman,* Assistant Attorneys General, for the Attorney General of the State of New York, and by *Morris H. Schneider* and *Seymour S. Ross* for the County of Nassau.

MR. JUSTICE DOUGLAS delivered the opinion of the Court.

Appellants, qualified and registered electors of Kent County, Michigan, brought this suit in the Federal District Court to enjoin the Board of Education of Kent County from detaching certain schools from the city of Grand Rapids and attaching them to Kent County, to declare the county board to be unconstitutionally constituted, and to enjoin further elections until the electoral system is redesigned. Attack is also made on the adequacy of the statutory standards governing decisions of the county board in light of the requirements of due process. We need not bother with the intricate problems of state law involved in the dispute. For the federal posture of the case is a very limited one. The people of Michigan (qualified school electors) elect the local school boards.[1] No constitutional question is presented as respects those elections. The alleged constitutional questions arise when it comes to the county school board. It is chosen, not by the electors of the county, but by delegates from the local boards. Each board sends a delegate to a biennial meeting and those delegates elect

---

[1] In Michigan the members of the local school district's board are elected by popular vote of the residents of the district. See Mich. Stat. Ann. § 15.3023 (1959); Mich. Stat. Ann. §§ 15.3027, 15.3055, 15.3056, 15.3107, 15.3148, 15.3188, 15.3511 (Supp. 1965).

a county board of five members, who need not be members of the local boards,[2] from candidates nominated by school electors. It is argued that this system of choosing county board members parallels the county-unit system which we invalidated under the Equal Protection Clause of the Fourteenth Amendment in *Gray* v. *Sanders,* 372 U. S. 368, and violates the principle of "one man, one vote" which we held in that case and in *Reynolds* v. *Sims,* 377 U. S. 533, was constitutionally required in state elections. A vast array of facts is assembled showing alleged inequities in a system which gives one vote to every local school board (irrespective of population, wealth, etc.) in the selection of the county board. A three-judge court was convened, and it held by a divided vote that the method of constitution of the county board did not violate the Fourteenth Amendment. 254 F. Supp. 17. We noted probable jurisdiction, 385 U. S. 966.

We conclude that a three-judge court was properly convened, for unlike the situation in *Moody* v. *Flowers, ante,* p. 97, this is a case where the state statute that is challenged [3] applies generally to all Michigan county school boards of the type described.

We start with what we said in *Reynolds* v. *Sims, supra,* at 575:

> "Political subdivisions of States—counties, cities, or whatever—never were and never have been considered as sovereign entities. Rather, they have been traditionally regarded as subordinate governmental

[2] Mich. Stat. Ann. §§ 15.3294 (1), 15.3295 (1) (Supp. 1965). By Mich. Stat. Ann. §§ 15.3294 (2)–15.3294 (6) (Supp. 1965), members of the county board may be chosen at popular elections provided the board submits the matter to a referendum and the people approve. So far as we are advised, no such referendum has been held; and the membership of the county board, here challenged, was constituted by electors chosen by the local boards.

[3] Mich. Stat. Ann. § 15.3294 (1) (Supp. 1965).

108

instrumentalities created by the State to assist in the carrying out of state governmental functions. As stated by the Court in *Hunter* v. *City of Pittsburgh,* 207 U. S. 161, 178, these governmental units are 'created as convenient agencies for exercising such of the governmental powers of the State as may be entrusted to them,' and the 'number, nature and duration of the powers conferred upon [them] . . . and the territory over which they shall be exercised rests in the absolute discretion of the State.' "

We find no constitutional reason why state or local officers of the nonlegislative character involved here may not be chosen by the governor, by the legislature, or by some other appointive means rather than by an election. Our cases have, in the main, dealt with elections for United States Senator or Congressman (*Gray* v. *Sanders, supra; Wesberry* v. *Sanders,* 376 U. S. 1) or for state officers [4] (*Gray* v. *Sanders, supra*) or for state legislators. *Reynolds* v. *Sims, supra; WMCA, Inc.* v. *Lomenzo,* 377 U. S. 633; *Davis* v. *Mann,* 377 U. S. 678; *Roman* v. *Sincock,* 377 U. S. 695; *Lucas* v. *Colorado Gen. Assembly,* 377 U. S. 713; *Marshall* v. *Hare,* 378 U. S. 561.

They were all cases where elections had been provided and cast no light on when a State must provide for the election of local officials.

A State cannot of course manipulate its political subdivisions so as to defeat a federally protected right, as for example, by realigning political subdivisions so as to deny a person his vote because of race.[5] *Gomillion* v. *Light-*

---

[4] The officers in *Gray* v. *Sanders* were: U. S. Senator, Governor, Lieutenant Governor, Justice of the Supreme Court, Judge of the Court of Appeals, Secretary of State, Attorney General, Comptroller General, Commissioner of Labor, and Treasurer.

[5] Nor can the restraints imposed by the Constitution on the States be circumvented by local bodies to whom the State delegates authority. *Standard Computing Scale Co.* v. *Farrell,* 249 U. S. 571, 577; *Cooper* v. *Aaron,* 358 U. S. 1, 17.

*foot,* 364 U. S. 339, 345. Yet as stated in *Anderson* v. *Dunn,* 6 Wheat. 204, 226:

> "The science of government is the most abstruse of all sciences; if, indeed, that can be called a science which has but few fixed principles, and practically consists in little more than the exercise of a sound discretion, applied to the exigencies of the state as they arise. It is the science of experiment."

If we assume *arguendo* that where a State provides for an election of a local official or agency, the requirements of *Gray* v. *Sanders* and *Reynolds* v. *Sims* must be met, we are still short of an answer to the present problem and that is whether Michigan may allow its county school boards to be appointed.

When we stated ". . . the state legislatures have constitutional authority to experiment with new techniques" (*Day-Brite Lighting, Inc.* v. *Missouri,* 342 U. S. 421, 423), we were talking about the Due Process Clause of the Fourteenth Amendment, as was Mr. Justice Holmes, dissenting in *Lochner* v. *New York,* 198 U. S. 45, 75, when he said ". . . a constitution is not intended to embody . . . the organic relation of the citizen to the State . . . ." But as we indicated in *Gomillion* v. *Lightfoot, supra,* it is precisely that same approach that we have taken when it comes to municipal and county arrangements within the framework of a State. Save and unless the state, county, or municipal government runs afoul of a federally protected right, it has vast leeway in the management of its internal affairs.

The Michigan system for selecting members of the county school board is basically appointive rather than elective.[6] We need not decide at the present time whether

---

[6] The delegates from the local school boards, not the school electors, select the members of the county school board. While the school electors elect the members of the local school boards

a State may constitute a local legislative body through the appointive rather than the elective process. We reserve that question for other cases such as *Board of Supervisors* v. *Bianchi, ante,* p. 97, which we have disposed of on jurisdictional grounds. We do not have that question here, as the County Board of Education performs essentially administrative functions; [7] and while they are important, they are not legislative in the classical sense.

Viable local governments may need many innovations, numerous combinations of old and new devices, great flexibility in municipal arrangements to meet changing

and the local school boards, in turn, select delegates to attend the meeting at which the county board is selected, the delegates need not cast their votes in accord with the expressed preferences of the school electors. There is not even a formal method by which a delegate can determine the preferences of the people in his district. It is evident, therefore, that the membership of the county board is not determined, directly or indirectly, through an election in which the residents of the county participate. The "electorate" under the Michigan system is composed not of the people of the county, but the delegates from the local school boards.

[7] The authority of the county board includes the appointment of a county school superintendent (Mich. Stat. Ann. § 15.3298 (1) (b) (Supp. 1965)), preparation of an annual budget and levy of taxes (Mich. Stat. Ann. § 15.3298 (1) (c) (Supp. 1965)), distribution of delinquent taxes (Mich. Stat. Ann. § 15.3298 (1) (d) (Supp. 1965)), furnishing consulting or supervisory services to a constituent school district upon request (Mich. Stat. Ann. § 15.3298 (1) (g) (Supp. 1965)), conducting cooperative educational programs on behalf of constituent school districts which request such services (Mich. Stat. Ann. § 15.3298 (1) (i) (Supp. 1965)), and with other intermediate school districts (Mich. Stat. Ann. § 15.3298 (1) (j) (Supp. 1965)), employment of teachers for special educational programs (Mich. Stat. Ann. § 15.3298 (1) (h) (Supp. 1965)), and establishing, at the direction of the Board of Supervisors, a school for children in the juvenile homes (Mich. Stat. Ann. § 15.3298 (1) (k) (Supp. 1965)). One of the board's most sensitive functions, and the one giving rise to this litigation, is the power to transfer areas from one school district to another. Mich. Stat. Ann. § 15.3461 (1959).

urban conditions. We see nothing in the Constitution to prevent experimentation. At least as respects non-legislative officers, a State can appoint local officials or elect them or combine the elective and appointive systems as was done here. If we assume *arguendo* that where a State provides for an election of a local official or agency—whether administrative, legislative, or judicial—the requirements of *Gray* v. *Sanders* and *Reynolds* v. *Sims* must be met, no question of that character is presented. For while there was an election here for the local school board, no constitutional complaint is raised respecting that election. Since the choice of members of the county school board did not involve an election and since none was required for these nonlegislative offices, the principle of "one man, one vote" has no relevancy.

*Affirmed.*

MR. JUSTICE HARLAN and MR. JUSTICE STEWART concur in the result.