LOUIS SCHWARTZ, PLAINTIFF, v. BOARD OF ALDER-MEN OF CITY OF PATERSON, *ET AL.*, DEFENDANTS.

Superior Court of New Jersey
Law Division

Decided February 18, 1969.

496

Mr. *Louis Schwartz* for plaintiff (*Messrs. Schwartz and Schwartz*, attorneys).

Mr. *Joseph A. LaCava* for defendants Frank J. Sciro, City Clerk of Paterson and the City of Paterson.

Mr. *Charles H. Roemer* for defendants Daniel J. Koning *et al.*, constituting the individual members of the Board of Aldermen of Paterson.

MOUNTAIN, J. S. C.   This suit seeks to compel the reapportionment of the Board of Aldermen of the City of Paterson according to the one-man one-vote principle as set forth in *Reynolds v. Sims*, 377 *U. S.* 533, 84 *S. Ct.* 1362, 12 *L. Ed.* 2d 506 (1964), and explicitly made applicable to municipal governments in *Avery v. Midland County*, 390 *U. S.* 474, 88 *S. Ct.* 1114, 20 *L. Ed.* 2d 45 (1968). Parenthetically, the holding in *Avery* was clearly forecast in this State in Judge Wick's opinion in *Mauk v. Hoffman*, 87 *N. J. Super.* 276 (*Ch. Div.* 1965) concerned with county government and the composition of boards of chosen freeholders.

The board of aldermen consists of 11 members, each elected from a separate aldermanic district or ward. At the time of the 1960 census these districts ranged in population from 4,120 residents in the smallest to 20,334 residents in the largest; there is very clearly a decided malapportionment.

It is nevertheless urged by the board that notwithstanding its being malapportioned, its powers are so insignificant and so essentially administrative in nature that the one-man one-vote rule should not be applied to it; that this rule applies only in respect of bodies having general powers of government. *Sailors v. Kent County Board of Education*, 387 *U. S.* 105, 87 *S. Ct.* 1549, 18 *L. Ed. 2d* 650 (1967); *Hadley v. Junior College Dist. of Met. Kansas City, Mo.*, 432 *S. W. 2d* 328 *(Sup. Ct.* 1868), rehearing denied *Mo.* 432 *S. W. 2d* 328 *(Sup. Ct.* 1968).

In evaluating the contentions of the parties it is first necessary to examine carefully the powers and functions of the board of aldermen. When initially created, *L.* 1871, *c.* 325, the board clearly possessed general governing powers. However, *chapters* 45, 46 and 62 of the *Laws of* 1907 (now *R. S.* 40:174–6 *et seq.*, 40:186–5 *et seq.* and 40:175–9 *et seq.*) made provision for the creation of a board of fire and police commissioners, a board of finance and a board of public works. Most of the powers of the board of aldermen were transferred to and divided among these three boards. *Grosso v. Paterson*, 55 *N. J. Super.* 164, 170 *(Law Div.* 1959), affirmed 33 *N. J.* 477 (1960); *McCarter v. McKelvey*, 78 *N. J. L.* 3 *(Sup. Ct.* 1909), affirmed *sub. nom. Attorney-General v. McKelvey*, 78 *N. J. L.* 621 *(E. & A.* 1910) (sustaining constitutionality). As a result of the governmental changes of 1907, the board of aldermen retained only the residuum of powers not given to the newly created bodies.

A comparison of the 1871 and 1907 legislation reveals that the powers remaining in the board of aldermen seem confined to the appointment of certain municipal officials such as the city clerk and the register of licenses, a right of veto over mayoral appointments to the board of health, and a limited authority to pass certain regulatory ordinances. The materials provided for in the inspection of the court, especially the enumerated list of ordinances of the board of aldermen supplied by the plaintiff, reveal very clearly the nature of these powers. Ordinances may be adopted with respect to

the regulation or licensing of the following: constables, coin-operated amusement devices and their distributors, amusement parlors, carnivals, dance halls, dancing academies, amusement parks, pool halls, roller skating rinks, shows and entertainments, dogs, bicycles, auctions, barber and beauty shops, boat rentals, close-out sales, coin-operated laundries, itinerant photographers, junk yards and motor vehicle junk dealers, parking lots, florists, rooming houses, transient merchants and peddlers. The board is also authorized to establish and maintain a dog pound, to control the rents of substandard multiple dwellings, and to impose penalties in respect of certain miscellaneous kinds of disorderly conduct, in respect of deceptive advertising and for violations of restrictions upon beekeeping. The sum of these authorizations amounts to something far less than general powers of government. Powers normally thought of as being included within the latter at the municipal level, but not possessed by Paterson's board of aldermen, include the power to tax, to regulate land use by zoning and planning, to regulate streets, playgrounds, parks and public buildings, to supply or make provision for water, electricity, sewer facilities and other public utilities, to issue bonds and incur indebtedness, and to exercise the power of eminent domain. The list could easily be lengthened.

While there does not appear to be a New Jersey decision which has related the present issue to comparable facts, the United States Supreme Court decision in *Sailors v. Kent County Bd. of Education, supra,* seems pertinent. There the court dealt with a suit to compel reapportionment of a county school board. The powers of this board included the authority to prepare an annual budget and levy taxes, to provide numerous services to constituent school districts, and to transfer areas from one school district to another. The court said of the above enumerated powers that they are "essentially administrative functions and while they are important, they are not legislative in the classical sense,"

and concluded that the one-man one-vote doctrine was therefore not applicable.

It seems clear that the powers of Paterson's board of aldermen are more administrative in nature and afford less opportunity for discrimination against under-represented districts than those of the county school board in *Sailors*. While a board of aldermen might ordinarily be thought of as having more general legislative powers than a board of education, this is not true in the case of the rather anomalous government of the City of Paterson. The Paterson board is limited almost exclusively to administrative functions and clearly does not possess general powers of government.

In light of what has been said, I find that the present procedure for selecting the members of the board of aldermen is not violative of the United States Constitution, and plaintiff's application to compel the reapportionment of this board is therefore denied. There will be no costs.